## CORNES vs. MINOT.

C. and M. were the owners of adjoining lots, C.'s being the north and M.'s the south lot.   Both parties claimed title from the same source, C.'s deed being the oldest.   But M.'s lot had been previously contracted to be sold to O. who was then in possession, under his contract.   A brick building stood on C.'s lot, at the date of his conveyance.   The description in C.'s deed was as follows: "Thence continuing the same course along the front of said building, seventy-nine feet nine inches, to the corner thereof, being the north line of premises contracted to O.; thence easterly along the south side of the *brick wall* of said building, seventy-seven feet to an alley."   Reserving to the grantor "the free and uninterrupted use of the south wall of the Collins buildings, for the support of the timbers and floors of the store and building adjoining, occupied by O., as the same is now used, and the use of the chimney flues in said wall," &c.   The foundation wall of the building on C.'s lot, on the north side, projected about six or eight inches beyond the south face of the brick wall.   M. erected a building on his lot, constructing his north wall up to, and against C.'s south brick wall; C. claiming that his deed carried him to the south line

Cornes *v.* Minot.

of the *foundation wall,* instead of the south line of the *brick wall,* of his building, brought ejectment for the intermediate six or eight inches.

*Held,* that the division line between the lots mentioned in C.'s deed, was intended to be a straight line from the southwest corner of the *building* to the rear of the lot; and that the terms "corner of the building," and "along the south side of the brick wall," clearly limited C.'s south line to the outer surface of the brick wall; and that C. had no title to the strip of land in question.  J. C. SMITH, J. dissented.

THIS was an action of ejectment, brought to recover a strip of land about six inches in width, and seventy-seven feet in length, fronting on Main street, in the village of Brockport, upon which the defendant had erected the wall of a brick building. The Bank of Monroe was the common source of title. On the 1st of January, 1852, the trustees of that bank conveyed to the plaintiff a parcel of land bounded, so far as affects the question in this case, as follows: "Thence continuing the same course along the front of said building seventy feet and nine inches to the southwest corner thereof, being the north line of premises contracted to J. C. Ostrom (the defendant's premises;) thence easterly along the south side of the brick wall of said building, and continuing that course, in all about seventy-seven feet, to an alley," with a reservation to the grantors and their assigns of the use of the south wall of the Collins building, (the southernmost building on the premises conveyed,) for the support of the timbers and floors of the store and building theretofore and now occupied by J. C. Ostrom, (the defendant's store,) as the same was then used, and the use of the chimney flues in said wall, as the same had theretofore been used by J. C. Ostrom. The same grantors, in pursuance of a contract made before the 1st of January, 1852, conveyed to J. C. Ostrom, the defendant's grantor, a lot of land in said village, described in the deed as follows: "Beginning on the east line of Main street, at the southwest corner of the brick block of stores conveyed by the party of the first part to Thomas Cornes; thence" (passing around the lot, until the northeast corner thereof is reached,) "to a point where a line continued along

the south side of the south wall of the brick building conveyed to said Cornes, would intersect said alley; thence westerly along said line and the south side of the *south wall* of said building to the place of beginning, with the privilege of using the said south wall as the same is now used for supporting the timbers of the building on the premises hereby conveyed, and the use of the chimney flues in the said wall, as the same have been heretofore used by the occupants of the building on the premises hereby conveyed." At the time the plaintiff took his deed there was a brick store on the Ostrom, or defendant's lot, the north wall of which was the south brick wall of the plaintiff's building; the floors and floor timbers of the Ostrom building running up to, and into said brick wall, and one side of the rooms being said wall. The front and rear walls of the defendant's building ran up to, abutted against, and were locked into the south brick wall of the plaintiff's building. There was an irregular stone wall upon which this brick wall was founded, which projected six inches or more at the top and enlarging as it descended south of the brick wall. In 1860 the defendant became the owner of the premises conveyed to Ostrom, and in November of that year, the building on the defendant's premises was destroyed by fire. In the spring of 1861 he rebuilt his block, and not choosing to use the plaintiff's wall for his floor timbers &c. built his north wall up to, and against the plaintiff's south brick wall. For occupying this strip of six inches or more south of his brick wall, and between it and the south side of this irregular stone wall, the plaintiff brought his action.

The action was tried at the circuit before Hon. JAMES C. SMITH, a justice of this court, without a jury, who directed a judgment to be entered in favor of the plaintiff. The defendant appealed.

*Norton & Bowman,* for the appellant.

*Jerome Fuller,* for the respondent.

Cornes *v.* Minot.

JOHNSON, J.   The plaintiff in his complaint claims title
and the right of possession to a strip about six inches in
width south of the south side or face of the brick wall of his
building, upon which strip the defendant has erected the
north wall of a brick building which he owns, and now occu-
pies.   The case was tried at special term without a jury, and
the judge held that according to the true interpretation of the
plaintiff's deed he was seised in fee of this strip as claimed in
the complaint, and gave judgment in his favor.   I am of the
opinion that the learned justice was mistaken in the construc-
tion put by him upon the plaintiff's conveyance, and that, by a
fair and rational interpretation of the instrument, he acquired
no title to this strip.   The two lots adjoin each other, the
plaintiff's being the north, and the defendant's the south lot.
Both parties claim title from the same source.   The plain-
tiff's deed is the oldest, and bears date the 1st of January,
1852.   The deed from the same grantors to John C. Ostrom,
through which the defendant claims, bears date the 14th of
October in the same year.   It appears by the plaintiff's con-
veyance, however, and also by the evidence, that at the time
the plaintiff's conveyance was executed and delivered, the
defendant's premises were contracted to Ostrom, and he was
then in possession under his contract.   There was then a
building upon the premises, which has since been destroyed
by fire.   The floor timbers of that building projected into,
and rested wholly, at the north end, upon the south brick
wall of the plaintiff's building, which wall also contained
flues for the use of the building on the defendant's premises,
and which were used as appurtenant to the south building.
It also appears from the evidence, that the plastering of the
north end of the rooms in the south building was directly
upon the south face of the brick wall of the plaintiff's build-
ing.   It further appears by the evidence, that the foundation
wall of the plaintiff's building, which is of stone, on the
south side, projects about six or eight inches beyond the south
face of the brick wall of the building, and it is the strip or
space occupied by this projection which the plaintiff claims

to recover.   His claim, in short, is, that his deed carries him to the south line of the foundation wall, instead of the south line of the brick wall of the building.   This is the only question in the case, and it is one of construction alone.

The description of the plaintiff's conveyance, so far as any question in the case is affected by it, is a follows :   " Thence continuing the same course along the front of said building seventy feet and nine inches, or thereabouts, to the corner thereof, being the north line of premises contracted to J. C. Ostrom ; thence easterly along the south side of the *brick wall* of said building, and continuing that course in all about seventy-seven feet to an alley."   " Reserving to the parties of the first part and their assigns the free and uninterrupted use of the south wall of the Collins building for the support of the timbers and floors of the store and building adjoining thereto and now occupied by J. C. Ostrom, as the same is now used, and the use of the chimney flues in said wall as the same have heretofore been used by said Ostrom."

It seems to my mind entirely clear, from this description, that the plaintiff's premises do not extend beyond the south face of the brick wall of the building.   His line extends to the southeast corner of the building, to the defendant's line ; thence easterly along the south side of the *brick wall.*   This I think is plainly to be gathered from the terms of the description alone.

But when we come to look at the reservation, the intention is placed beyond all doubt.   For by that reservation the use of the south brick wall conveyed to the plaintiff is reserved to the defendant, as the assignee of the plaintiff's grantors, for the support of the timbers and floors of his building.

It is claimed by the plaintiff's counsel that the terms " corner of the building," in the description, means the corner of the foundation of the building.   This might be so if there were nothing else.   But when we see that the line from this corner is made to run directly easterly along the south side of the brick wall, it appears plainly enough that it was the corner of the building proper, as it says, and not the extreme

Cornes *v.* Minot.

corner of the foundation wall, that was intended. It is also claimed that the terms "along the south side of the brick wall" do not necessarily mean directly, or immediatly, along the surface of the brick wall, but may mean some distance from it. It is perfectly obvious, however, that the plain, common, and natural meaning is, a line in immediate proximity to the brick wall. The brick wall is a definite and precise location of the line, about which there can be no mistake, and may well have been inserted for the very purpose of avoiding just the difficulty we are now encountering. According to the plaintiff's interpretation, his south line is not along the brick wall, but along the stone wall, which is the foundation of the brick wall several inches farther south. This would clearly be a strained construction, which ought never to be adopted in favor of injustice. If we depart at all from the brick wall how far may we go? There is evidence in the case tending to show that the foundation wall did not present a straight line on the south side, but was irregular, projecting about eight inches beyond the brick wall at the front southwest corner and more in places beyond that, while at the southeast corner, it did not project over three inches. The line was evidently intended to be a straight line from the southwest corner of the *building,* to the rear of the lot. And the terms "*corner of the building*" and "along the south side of the brick wall," seem to me clearly to limit the plaintiff's south line to the outer surface of the brick wall. And looking at the entire instrument, and noting carefully the whole description of the grant, in connection with the reservation, I can have no doubt that the plaintiff has not, and never had any title to the strip of land in question.

The judgment should therefore be reversed, and a new trial ordered, with costs to abide the event.

WELLES, J. concurred. J. C. SMITH, J. dissented.

Judgment reversed.

[MONROE GENERAL TERM, March 7, 1864. *Welles, Johnson* and *J. C. Smith,* Justices.]